UNITED STATES *v.* HENSEL, BRUCKMANN & LORBACHER (No. 1734).[1]

1. CONSTRUCTION—METHODS OF PRODUCTION.

The tariff act classifies merchandise according to the method of its production as well as according to the nature of the product.

2. CONSTRUCTION—LITERAL.

Where the language of a statute is plain and unambiguous it must be followed.

3. INDIGO PASTE.

Indigo paste is obtained from indigo, and is dutiable as a dye obtained from indigo under paragraph 514, tariff act of 1913.

4. THIOINDIGO—COAL-TAR DYES OR COLORS.

Colors known as thioindigo, which are shown to be derived from napthalene, a coal-tar product, and not from indigo are dutiable as coal-tar dyes or colors under paragraph 20, tariff act of 1913. The fact that indigo may be derived from napthalene and the fact that colors chemically and practically similar to or identical with the ones at bar may be derived from indigo will not suffice to make the ones at bar classifiable as "dyes obtained from indigo," paragraph 514.

United States Court of Customs Appeals, January 16, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7914 (T. D. 36450.)

[Modified.]

Bert Hanson, Assistant Attorney General (*Charles D. Lawrence*, special attorney, of counsel), for the United States.

*Allan R. Brown* for appellees.

[Oral argument Dec. 13, 1916, by Mr. Lawrence and Mr. Brown.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The merchandise here in suit consists of a variety of indigoid dyes, so called, admittedly produced from naphthalene, which concededly is a product of coal tar. The dyes are described and referred to in the record as (*a*) indigo in paste; (*b*) thioindigo pink, 247 paste; (*c*) thioindigo red, B paste; (*d*) thioindigo scarlet, 6086 powder; (*e*) thioindigo red, 970 paste. They were classified for duty by the collector at the port of New York as "coal-tar dyes" under the terms of paragraph 20 of the tariff act of 1913, providing:

20. Coal-tar dyes or colors, not specially provided for in this section, * * *.

The Board of General Appraisers reversed the decision of the collector and sustained the importers' protest, claiming the dyes or

[1] Reported in T. D. 36965 (32 Treas. Dec., 89).

colors entitled to free entry as "dyes obtained from indigo," under paragraph 514 of the free list of that act, reading:

514. Indigo, natural or synthetic, dry or suspended in water, and dyes obtained from indigo.

The Government appeals.

The issue presented to this court for determination, therefore, is the single one, Are these dyes "coal-tar dyes or colors" or "dyes obtained from indigo," as those terms are used in the quoted parts of the existing customs revenue law?

A single witness of exceptional information and fairness testified before the board. He was a chemist and colorist connected with the importing firm. The material and controlling parts of his testimony may well be stated in the words of counsel and the witness:

Q. Is the indigo in those dyestuffs original or in a modified form?—A. In a modified form.

Q. What do you mean by saying the indigo is in a modified form?—A. I mean by that that they *can be* made from indigo, that their chemical constituents are very similar. In these articles, however, the NH molecule has been replaced principally by one sulphur molecule; they have an extra sulphur molecule.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Q. Can these colors be made from the material indigo?—A. They can.

Q. What?—A. Yes, they can.

Q. But in practice are they made from the material indigo?—A. No.

Q. Are any of them, any of these five made from indigo?—A. I don't know.

Q. What?—A. I don't know.

Q. Look at the five and say which ones can be commercially obtained from indigo?—A. Indigo paste.

Q. The process of producing the other four dyes, the four other than the indigo paste in this case, is it commercially practicable to make them from indigo?—A. No, the process would be too expensive.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Q. (By General Appraiser SULLIVAN.) Are you acquainted with indigo in its natural state?—A. Yes, I am.

Q. Are the dyes referred to by Mr. Strauss and referred to in the invoices, are they obtained from indigo in its natural state?—A. Not on a commercial scale, because it would be too expensive.

General Appraiser SULLIVAN. The question strikes me that you must prove that dyes obtained from indigo were obtained from indigo.

Q. (By General Appraiser McCLELLAND.) Is indigo obtained from naphthalene?—A. Yes.

Q. Aren't these four exhibits obtained from naphthalene also?—A. Yes.

Q. The same as indigo?—A. Yes.

Q. Could these have been directly from indigo?—A. Yes, they *can be* derived directly from indigo.

Q. But you stop the indigo process; the process of making indigo is a further process than making these dyes?—A. Yes; that is it.

Q. (By General Appraiser BROWN.) You get the same results in making this from naphthalene as you would from indigo?—A. The same chemical results.

Q. (By Mr. LAWRENCE.) As I understand you, Doctor, one out of the five samples here was made directly from indigo?—A. Yes; indigo paste is made directly from indigo.

Q. That is the stuff in this bottle; that is, indigo paste is made from indigo direct?—A. Yes.

Q. And the other four are not made from indigo?—A. Not commercially, but they *can be* made from indigo.

Q. When you say they can be made you mean it is a mechanical possibility to so make them?—A. It is a possibility, but that process would be more expensive; therefore they are made by a different process.

Q. And it wouldn't be commercially profitable for a colorist to make these four other colors from indigo direct?—A. According to my knowledge, no.

Q. Now, naphthalene is a derivative of coal tar?—A. Yes.

Q. And that is in what form?—A. It is in crystals.

Q. Do you know how that is converted into indigo?—A. Yes.

Q. What is the common method of converting it into indigo, step by step?—A. From naphthalene the first step is that tannic acid is made by oxidation, and that is converted into anthranil acid; this anthranil acid is treated with glycolic acid, and so phenol glycolic acid is made, and this is treated with caustic soda, and so you get indoxil, and this is oxidized to indigo.

Q. If you will take the same napthalene, and your object was to produce any of the colors mentioned here except the indigo in paste, which of the processes as given, which you have outlined, would be eliminated?—A. The last two processes I mentioned.

Q. They would be eliminated?—A. The method is the same until anthranil acid is made.

From and upon the foregoing testimony the board predicated its decision, the philosophy of which is concisely paragraphed in the following excerpt from the opinion in the case:

The dyes in question are substantially and chemically dyes obtained from indigo, having the same or substantially the same chemical constituents as dyes obtained from the substance indigo, although they are, in fact, manufactured from naphthalene, which is also the basis of indigo. In other words, the product is the same as if it had been made from indigo, and the tariff levies duties on products or results of manufacturing processes rather than on methods of producing them.

The court is unable to agree with this reasoning. Upon the facts the importations are not obtained from indigo but napthalene from which also is obtained indigo. Both are sister products of the same parent which in turn relates its origin to coal tar. Both are coal-tar products. Neither is the product of or obtained from the other.

Moreover, the plenary power and purpose of Congress to levy duties on methods of production as well as products can not be questioned. The tariff laws abound with such instances. Paragraph 514, however, does not seem to so rate duties, but seems rather a provision calculated to provide free entry for indigo and all its derivatives. In the pertinent part it levies duty upon articles according to derivation. That is a familiar and frequent method of levy of duties under customs tariffs. The important and controlling feature of the case is that such is the plain and unambiguous purpose of Congress clearly expressed by the words "dyes obtained from indigo," and there is no power in the courts, in the presence of such a statutory mandate, to extend that privileges of free entry therein accorded to products similar to or even precisely alike such which are not "obtained from

indigo" but are obtained from another product, naphthalene, from which indigo is also obtained.

These words of Congress admit of no doubt as to their meaning, wherefore the opinion may well be concluded in the words of the Supreme Court in Merritt v. Welsh (104 U. S., 694, 702, 704):

> And it is better to submit to a temporary inconvenience than to set the laws all afloat by laying down a canon of construction which leaves the plain words, and seeks to spell out or guess at the supposed intent of the legislature, contrary or supplementary to that which is clearly embodied in the words it has used.
>
> \*       \*       \*       \*       \*       \*       \*
>
> If experience shows that Congress acted under a mistaken impression, that does not authorize the Treasury Department or the courts to take the part of legislative guardians, and by construction to make new laws which they imagine Congress would have made had it been properly informed, but which Congress itself on being properly informed has not as yet seen fit to make.

This court, in Klipstein & Co. v. United States (4 Ct. Cust. Appls., 510; T. D. 33936), held "indigo paste," so called, to be obtained from indigo. The testimony herein fully sustains that conclusion. As to indigo paste, therefore, the decision of the board should be affirmed. As to the other dyes or colors it should be reversed. It is accordingly decreed.

*Modified.*